

RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6 / 15 / 09

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| GEORGE LARRY MYERS, ET AL. | CIVIL ACTION NO. 6:08-CV-168 |
| VERSUS | JUDGE DOHERTY |
| BP AMERICA, INC., ET AL. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING & ORDER

Currently pending before the Court is a "Motion for Summary Judgment Regarding Third Party Demand of Defendant Power Marine, L.L.C. Against Cenergy, Inc.," filed by defendant and third party plaintiff, Power Marine, L.L.C. ("Power Marine"). [Doc. 111] In the motion, Power Marine seeks summary judgment as to its claim for defense and indemnity asserted against Cenergy, and seeks an order requiring Cenergy "to provide defense and indemnification, including the payment and reimbursement of all attorneys' fees and costs incurred and to be incurred." [Id.] For the following reasons, the motion is DENIED.

Plaintiff, George Larry Myers, filed this purported class action lawsuit on behalf of himself and similarly situated persons "who were exposed to airborne radiation dust/t-norms" while "working on the L/B Dixie Patriot or supply boats working in conjunction with the L/B Dixie Patriot to dismantle the BP Platform during the period of approximately March 1, 2007 to at least until April 30, 2007." [Doc. 54, ¶3] Plaintiff alleges he not only worked on the L/B Dixie Patriot, but also lived aboard the vessel while decommissioning BP's platform. [Doc. 54, ¶ 7] Defendants deny these allegations. [Doc. Nos. 59, ¶ 7; 61 ¶ VII] Plaintiff alleges the platform which was being

decommissioned was located at South Timbalier 160E, on the Outer Continental Shelf, off the coast of Louisiana. [Doc. Nos. 54, ¶ 4; 104, p.1] Defendants also deny that allegation. [Doc. Nos. 59, ¶ 4; 61, ¶ IV] Plaintiff's complaint is ambiguous as to his employer; nevertheless, Power Marine and Cenergy appear to agree that plaintiff was either Cenergy's employee or its independent contractor. [Doc. Nos. 111-4, ¶ 2; 121-2, ¶ 2; *see also* 157-4; ¶ 5; 167-3, ¶ 5]

On March 26, 2007 (*i.e.* during the time period in which plaintiff claims he was injured), Power Marine and Cenergy entered into a "Master Indemnity Agreement" ("Agreement"). [Doc. 111-3] Pursuant to Sections 1 and 2 of the Agreement, Cenergy agreed to defend and indemnify Power Marine from claims made by Cenergy's employees against Power Marine, and Power Marine agreed to defend and indemnify Cenergy from claims made by Power Marine's employees against Cenergy.[1][2] Additionally, pursuant to a Master Services Contract between BP and Cenergy executed

---

[1] The contractual provisions cover a broader category of persons than "employees." However, for ease of reference, the Court has referred to these persons simply as "employees," as have the parties in their briefing.

[2] The provisions at issue specifically state as follows:

1.  **INDEMNIFICATION BY CONTRACTOR GROUP** - Contractor Group [Cenergy] shall be solely liable for, and shall release, defend, indemnify and hold harmless Company Group [Power Marine] from and against any Losses, whether groundless or not, arising out of or related to any injury, illness or disease, suffered by or death of any member of Contractor Group [Cenergy], or damage to property owned, leased or used by Contractor Group [Cenergy], **REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE (IN ANY AMOUNT), STRICT LIABILITY OR OTHER FAULT OF ANY MEMBER OF COMPANY GROUP** [Power Marine] **OR THE UNSEAWORTHINESS OF ANY VESSEL, EXCEPTING ONLY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF COMPANY GROUP** [Power Marine].

2.  **INDEMNIFICATION BY COMPANY GROUP** - Company Group [Power Marine] shall be solely liable for, and shall release, defend, indemnify and hold harmless Contractor Group [Cenergy] from and against any Losses, whether

2

on February 4, 2005 (*i.e.* prior to the time period in which plaintiff claims he was injured), Cenergy agreed to defend and indemnify Power Marine against all injuries to Cenergy's employees. [Doc. 122-4 § 14.07] Likewise, on November 1, 2005, Power Marine and BP executed a Vessel Charter Contract whereby Power Marine agreed to defend and indemnify Cenergy against claims by Power Marine's employees.[3] [Doc. 122-5 § 17.05]

Considering the burden of production associated with summary judgment motions and the prohibition against weighing evidence in this context, this Court finds the following underlying facts and legal issues remain in dispute or are inadequately briefed, thus precluding summary judgment[4]:

1. Whether or not plaintiff was a borrowed employee of Power Marine[5]; and

---

> groundless or not, arising out of or related to any injury, illness or disease, suffered by or death of any member of Company Group [Power Marine], or damage to property owned, leased or used by Company Group [Power Marine], **REGARDLESS OF WHETHER CAUSED OR CONTRIBUTED TO BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE (IN ANY AMOUNT), STRICT LIABILITY OR OTHER FAULT OF ANY MEMBER OF CONTRACTOR, GROUP [Cenergy], EXCEPTING ONLY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF CONTRACTOR GROUP [Cenergy].**

[Doc. 113-1, pp. 1-2]

[3]Both contracts with BP set forth the parameters of the "Cross Indemnity" provisions, followed by this statement: "It is the intent of the parties herein to create a third party beneficiary obligation in favor of Company's other contractors who have included reciprocal cross indemnity provisions in their respective contracts with Company." [Doc. 122-4 § 14.07; 122-5 § 17.05]

[4]The Court has merely set forth its most obvious concerns; this listing is not necessarily exhaustive.

[5]Plaintiff does not explicitly state by whom he was employed in his complaint. Rather, plaintiff is rather cryptic on this issue, implying he was employed by several defendants, including Power Marine, as well as Cenergy. [Doc. 54, ¶¶ 4, 5, 12] Whether plaintiff was employed by Power Marine, Cenergy, both or neither must be determined before the Court can determine whether or not defense and indemnity is owed, and if so, by whom and to whom defense and indemnity is owed. Otherwise, it is impossible to determine whether plaintiff is a member of "Company Group," "Contractor Group," or "Contractor," as those terms are defined in the agreement. [Doc. 111-3, §§ (A), (B), and (C)]

2. The law applicable to the contract.[6]

Due to the foregoing, the Motion for Summary Judgment filed by Power Marine [Doc. 111] is hereby DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 17 day of June, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT COURT

---

[6]More specifically, the parties have not adequately addressed whether this is a maritime or non-maritime contract. Although the Agreement contains a choice of law provision at Section 9 which states, "This Agreement shall be governed by and interpreted in accordance with the general maritime law of the United States of America," the parties cannot choose to be governed by maritime law when OCSLA applies. *See e.g.* Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co., Inc., 448 F.3d 760, 772 & n.8 (5th Cir. 2006). If OCSLA applies, then Louisiana law will likely apply (all parties appear to agree the work was being performed off the coast of Louisiana) to the extent it is not inconsistent with federal law. 43 U.S.C. § 1333(a)(2)(A). If Louisiana law applies through OCSLA, then the Louisiana Oilfield Indemnity Act ("LOIA"), La. Rev. Stat. § 9:2780, may invalidate the Agreement's provision for defense and indemnity, despite Power Marine's argument that 33 U.S.C. § 905(c) would allow such a provision. *See e.g.* Wagner v. McDermott, 899 F.Supp. 1551, 1555, 1558 (W.D.La. 1994) and cases cited therein (where OCSLA applies and contract is "a non-vessel-related indemnity agreement ... the LOIA applies to invalidate the indemnity provisions of the contract"); Hogden v. Forest Oil Corp., 87 F.3d 1512 (5th Cir. 1996). For the same reasons, the defense and indemnity provision relied upon by Power Marine, contained in the contract between BP and Cenergy, would likely also be invalid. However, the information before the Court is wholly inadequate to make any of these determinations. As only one example, the Court has not been provided with a work order or any other evidence describing the specific work to be performed. (It would seem there must be some subsequent modification of the Agreement, as the Agreement is very vague. For example, no dates are provided, the work is not identified, etc.)

4