# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**GEORGE LARRY MYERS**        *CIVIL ACTION NO. 08-0168

**VS.**                                      *JUDGE DOHERTY

**BP AMERICA, INC., ET AL.**      *MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the defendants' Motion for Partial Summary Judgement. [rec. doc. 167]. By this Motion, the defendants, Crown Oilfield Services, Inc., BP America, Inc., Production Management Industries, LLC, Brand Scaffold Builders, LLC, El Mar Consulting, LLC, Cenergy Corporation, and Power Marine, LLC (collectively "the defendants"), seek summary judgment on the plaintiff's request to certify this matter as a class action. The plaintiff, George Larry Myers ("Myers"), has filed opposition. [rec. doc. 170, 192]. Oral argument on the Motion was held on June 11, 2009. In response to concerns raised by the undersigned during oral argument, the parties have filed authorities in support of, and in opposition to, the disposition of the class certification issue by summary judgment without an evidentiary hearing. [rec. docs. 178 and 179].

For the reasons which follow, it is recommended that is the defendants' Motion for Partial Summary Judgement [rec. doc. 167] be **granted**, and, accordingly, that the **plaintiff's request to certify** this matter as a **class action** be **denied.**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, George Larry Myers, filed this purported class action lawsuit in state court[1] on behalf of himself and allegedly similarly situated people claiming personal injury as a result of exposure to airborne radiation dust/t-norms, between March 1, 2007 and April 30, 2007, while engaged in a platform decommissioning project. On February 4, 2008, the defendants removed the case to this court.

The platform was located at South Timbalier Block 160, in the Gulf of Mexico, approximately thirty miles off the coast of Louisiana. A time-chartered liftboat, L/B DIXIE PATRIOT, which was supporting the platform decommissioning, was jacked up adjacent to the platform. Myers and other workers engaged in the decommissioning resided aboard L/B DIXIE PATRIOT while the work was being performed to the platform to take it out of service. There were also two supply boats assisting in the operation.

In his Third Amended Complaint, Myers claims that he became seriously ill, and afflicted with permanent neurological, psychological, and pathological conditions, as a result of the movement, improper storage, cutting and removal of radioactive liquids, flow lines and other contaminated equipment on, and from, the deck of the L/B DIXIE PATRIOT and adjacent work areas. [doc. 54, ¶ 6]. He also claims that he and other proposed class members suffered significant exposure to hazardous substances and, therefore, have a significantly increased risk of contracting a serious latent disease requiring future medical monitoring. [*Id*.].

---

[1]The 16th Judicial District Court.

The proposed class is defined as:

> [A]ll persons working on the L/B DIXIE PATRIOT or supply boats working in conjunction with the L/B DIXIE PATRIOT to dismantle the BP Platform during the period of approximately March 1, 2007 to at least until April 30, 2007 and who were exposed to airborne radiation dust/t-norms.

> The proposed Class is further subdivided as follows:

> a. Jones Act Seamen working on the L/B DIXIE PATRIOT or the supply boats working in conjunction with the L/B DIXIE PATRIOT on the project to dismantle the BP Platform; [and]

> b. Maritime workers working on the project to dismantle the BP Platform. [*Id*. at ¶ 3].

With respect to himself and other members of the seaman class, Myers asserts causes of action for negligence under the Jones Act, general maritime law, the applicable Louisiana law, the unseaworthiness of L/B DIXIE/PATRIOT and for maintenance and cure and, with respect to the maritime worker class, for negligence under 33 U.S.C. § 905(b). [*Id*. at ¶ 8-12].

Damages sought include those for past, present and future physical and mental pain and suffering, past present and future medical expenses including rehabilitation costs, doctor, hospital and pharmaceutical bills, costs for laboratory and physical examinations and diagnostic studies, past present and future loss of wages and fringe benefits, permanent disability and the cost of "medical monitoring to determine the progress of the disease(s) caused by the exposure to radioactive material." [*Id*. at ¶ 13].

Myers claims that he became aware that he was working with radiation in March. He was asked to perform a Geiger counter test on a pipe which had been removed from the

platform. Myers claims to have gotten a reading of 150-200 rads on the Geiger counter, and further asserts that with levels over 50 rads, workers were supposed to "suit up" with protective gear. Myers asserts that the work was not stopped and no personal protective equipment was provided to the workers. [Myers depo. at pg. 25-33]. Myers also recalled a telephone conference call in which he participated, where reference to radiation testing on bulk samples was discussed wherein it was stated that the results "were high, over 1000." [*Id*. at 52-57]. Myers then did some research on radiation exposure. [*Id*. at 191-192].

Myers claims that he had to leave the BP decommissioning project four days before the end of his hitch because he was coughing up blood, had fever, aches, pains and dizziness. [*Id*. at 308-310]. While he first thought his problems might have been from TB exposure, Myers later concluded that radiation exposure was the more likely cause of his symptoms. [*Id*. at 292-293; 318-321]. At least one physician, Dr. Williams, has opined that Myers has been exposed to radioactive materials in concentrations sufficiently high to be a cause of adverse health effects. [Defendants' Exhibit G].

Extensive discovery has revealed that Myers, the sole named class representative, is a sixty year old male, who has a twenty year history of pipe smoking (three to four times a day) and has preexisting medical problems including obstructive pulmonary disease (COPD), enlarged prostate, past complaints of bloody urine and hypoglycemia. [Myers depo. pg. 141, 131-132, 303-305; McWilliams depo. pg. 24, 30-31, 68; Kirby depo pgs. 13-17]. Myers has also suffered for years from recurring bronchitis, and has been previously

4

treated for exposure to chlorine gas. [Kirby depo. pg. 17-18]. He was also previously diagnosed with TB, has had high blood pressure, post-traumatic stress disorder as a result of his experience in Vietnam, and is believed to have been exposed to Agent Orange. [Myers depo pg. 327-328, 103-104, 354-359]. Myers has suffered a heart attack, has received four stints, and open heart surgery. [*Id*. at 105, 107-108, 117, 111-112, 361]. Moreover, Myers previously worked for an asbestos removal company for approximately eight years, directly supervising construction crews during removal activities. [*Id*. at 126-129].

The Department of Veterans Affairs considers Myers totally disabled and has been providing Myers disability benefits since 1995. [*Id*. at 111-112, 360-361]. He has also been declared totally disabled by the Social Security Administration, and accordingly has received Social Security disability benefits since 1999. [*Id.* at 361-363]. Thus, the defendants argue strenuously that Myers' has significant medical causation problems in this case as a result of his unique health and employment history, and that his symptoms and complaints may not, in fact, be the result of his radiation exposure, but rather, are the result of his pre-existing conditions.[2]

## LAW AND ANALYSIS

**Class Certification May be Determined Without an Evidentiary Hearing**

A district court has broad discretion in deciding whether to certify a class. *Castano v.*

---

[2]These arguments were presented in connection with the defendants' assertion that Myers' claim is not typical of the class. [rec. doc. 167-2, pgs. 23-26]. *See also* Olson depo. pgs. 78-79 and 99-101; McWilliams depo pg. 110; Affirmation of Sullivan, defendants' Exhibit K, ¶ C(1)(d)and (e).

*Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996) *citing Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Rule 23 does not itself require an evidentiary hearing on the question of class certification. *Merrill v. Southern Methodist University*, 806 F.2d 600, 608 (5th Cir. 1986) *citing Franks v. Kroger Co.*, 649 F.2d 1216, 1223 (6th Cir. 1981) and *Marcera v. Chinlund*, 565 F.2d 253, 255 (2d Cir. 1977); *Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 795 (5th Cir. 1982). Accordingly, it has been recognized that, "[i]n making the certification decision, courts generally agree that there is no absolute requirement that a preliminary hearing be held." 7AA Wright & Miller, Cooper & Freer, Federal Practice and Procedure, § 1785 (3rd Ed. 2008) (citing cases).

The Supreme Court has recognized that although the issue of class certification is usually enmeshed in law and fact, the issues are sometimes plain enough from the pleadings to determine the issue. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372 (1982). Accordingly, "[i]n determining whether a suit may be maintainable as a class action, a district court is not obliged to conduct an evidentiary hearing." *Bradford*, 673 F.2d at 795.

While, the Fifth Circuit has stated on numerous occasions that the district court should *ordinarily* conduct an evidentiary hearing on this question,[3] in cases "where 'clear grounds exist[ ] for denial of class certification' a district court may escape this obligation." *Merrill,* 806 F.2d at 608 *citing Morrison v. Booth*, 730 F.2d 642, 644 (11th Cir.1984)

_____

[3]*Merrill*, 806 F.2d at 608 *citing King v. Gulf Oil Co.*, 581 F.2d 1184, 1186 (5th Cir.1981) and *Shepard v. Beaird-Poulan, Inc.*, 617 F.2d 87, 89 (5th Cir.1980).

(interpreting Fifth Circuit precedent) and *Marcera v. Chinlund*, 565 F.2d 253, 255 (2nd Cir. 1977) (denial of class certification improper where genuine fact questions remained as to whether the requirements of Rule 23 were met). *See also*, *Lewis v. Heckler*, 752 F.2d 555, 557 (11th Cir. 1985) (finding the lack of an evidentiary hearing inconsequential since it was clear that the requirements of Rule 23 were not met); *Hall v. Burger King Corp.*, 1992 WL 372354, *3 (S.D.Fla. 1992) (denying certification on the motion submitted because it was clear that class certification would run counter to Rule 23); *Kemp v. Metabolife International, Inc.*, 2002 WL 113894, *3 (E.D.La. 2002) (Berrigan, Chief J.) (denying class certification on defense Motion for Judgment on the Pleadings because the certification issues were "clear enough such that an evidentiary hearing [was] unnecessary."); *Salvant v. Murphy Oil, USA, Inc.*, 2007 WL 2344912, *1 (E.D.La. 2002) (Fallon, J.) (same); *Bradford v. Edelstein,* 467 F.Supp. 1361, 1378 (D.C. Tex. 1979) (the evidence on file including that contained in motions for summary judgement was sufficient for the court to conclude without an evidentiary hearing that all of the prerequisites to class certification were met); *Johnson v. Long*, 67 F.R.D. 416, 417 (M.D.Ala. 1979) (the record before the court including the pleadings and evidence submitted in connection with defense motions for summary judgement was a sufficient basis for denying certification without an evidentiary hearing).

Accordingly, if there are no genuine disputed issues of material fact, on whether or not the requirements of Rule 23 are met, a motion for class certification under Rule 23 may be decided on motion for summary judgment.

**Standard on Motion for Summary Judgment**

Fed.R.Civ.Proc. Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

The defendants' Motion for Summary Judgment is properly made and supported. Thus, Myers may not rest upon his allegations in his pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

Myers has submitted evidence in opposition to the instant Motion. However, Myers' evidence fails to demonstrate that there is a genuine issue of material fact necessitating a

class certification hearing.  Specifically, Myers has failed to make a sufficient showing to establish the "predominance" requirement essential to class certification, an issue on which Myers bears the burden of proof.  Accordingly, summary judgment with respect to Myers' request for class certification is appropriate in this case.

**Rule 23 Requirements**

"The purpose of class actions is to conserve 'the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982); *Jenkins v. Raymark Ind.*, 782 F.2d 468, 471 (5th Cir. 1986). Plaintiffs have the burden of establishing that all requirements of Rule 23 have been satisfied.  *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996); *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

To satisfy this burden, the plaintiff must establish all of the following requirements of Rule 23(a):  (1) a class "so numerous that joinder of all members is impracticable" ("numerosity"); (2) the existence of "questions of law or fact common to the class" ("commonality"); (3) class representatives with claims or defenses "typical  . . . of the class" ("typicality"); and (4) class representatives that "will fairly and adequately protect the interests of the class" ("adequacy of representation"). Fed.R.Civ.P. 23(a); *Fleming v. Travenol Lab. Inc.*, 707 F.2d 829, 832 (5th Cir. 1983); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 606-608 and fn. 8, 117 S.Ct. 2231 (1997).

If any requirement is not met, the court must refuse to certify the class. *Castano*, 84 F.3d at 746; *Huff v. N.D. Cass Co.*,485 F.2d 710, 712 (5th Cir. 1973) (*en banc*). In addition, the plaintiff must establish that the action fits within one of the categories described in Rule 23(b). *Redditt v. Mississippi Extended Care Centers*, Inc., 718 F.2d 1381, 1387 (5th Cir. 1983). Plaintiffs, like Myers, who seek class certification under Rule 23(b)(3) must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual [class] members" ("predominance") and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Fed.R.Civ.P. 23(b)(3); *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) *citing Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003).

In determining the propriety of certifying a class action, the question is not whether plaintiffs have stated a cause of action, or will prevail on the merits, but *solely* whether the requirements of Rule 23 have been met. *Floyd v. Bowen*, 833 F.2d 529, 534 (5th Cir. 1987). The district court has wide discretion in deciding whether to certify a proposed class. *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1993).

**Rule 23(b)(3) Predominance Requirement**

In this case, Rule 23(b)(3)'s requirement that common questions of law or fact must "predominate over any questions affecting only individual [class] members," is fatal to the Plaintiff's proposed class and renders an analysis of the Rule 23(a) prerequisites

unnecessary. *See Steering Committee*, 461 F.3d at 601; *Unger*, 401 F.3d at 320.

To predominate, common issues must form a significant part of the individual cases. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999). The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a), because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Unger*, 401 F.3d at 320.

Courts have repeatedly held that claims for personal and emotional injuries arising from exposure to toxic chemicals are inappropriate for class treatment because individualized factual issues concerning specific causation and damages predominate over any common issues. *Steering Committee v. Exxon Mobil Corp*., 461 F.3d 598, 601-04 (5th Cir. 2006); *Salvant v. Murphy Oil, USA, Inc*., 2007 WL 2344912, *1 (E.D. La. 2002) (Fallon, J.) *citing Steering Committee*, 461 F.3d at 601-04 and *Hurd v. Monsanto Co.*, 164 F.R.D. 234, 239-40 (S.D. Ind. 1995) (collecting authorities).

Likewise, claims for injuries resulting from exposure to toxic products have generally been found not to meet the predominance requirement because in these kinds of actions, causation, damages and defenses must be determined individually. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231 (1997); *Kemp v. Metabolife International, Inc*., 2002 WL 113894, *4 (E.D. La. 2002) (Berrigan, Chief J.) *citing In re Fibreboard Corp*., 893 F.2d 706 (5th Cir. 1990) and Hon. Martin L.C. Feldman, *Class Actions in the Gulf South Symposium: Predominance and Products Liability Class Actions: An Idea Whose*

11

*Time Has Passed?,* 74 Tul. L.Rev. 1621 (2000). These cases, and, in particular, the Fifth

Circuit's decision in *Exxon Mobil*, which involved a toxic smoke plume, controls the instant

dispute and leads to the inescapable conclusion that this case cannot proceed as a class

action.

In *Exxon Mobil*, the Fifth Circuit said that class certification is inappropriate where

each of the plaintiff's claims "will be highly individualized with respect to proximate

causation, including individual issues of exposure, susceptibility to illness, and types of

physical injuries." *Exxon Mobil*, 461 F.3d at 602. Moreover, the court noted there that "one

set of operative facts would not establish liability and the end result would be a series of

individual mini-trials which the predominance requirement is intended to prevent." *Id*.

Despite plaintiff's arguments to the contrary, the evidence before this court

establishes that the claim of each individual class member that exposure to radiation

emanating from NORM impacted materials proximately caused their physical and emotional

injuries are no different from those of the claimants in *Exxon Mobil*; they are highly

individualized and inappropriate for class wide adjudication. The experts have uniformly

testified that any claims asserted by potential class members would necessarily require

individualized proof of specific causation including the location of each worker, the

duration of exposure, the proximity to the NORM impacted material, and the medical

causation, including pre-existing medical history, age, breathing rate, metabolic processes,

uptake, absorption and elimination rates, susceptibility to illness and the effects of radiation,

as well as analysis of individualized test results and data obtained from urinalysis or whole body counts, which, according to Dr. Sullivan, may be performed on each class member. [Plato, depo pg. 16-22; Williams, depo. pg. 35-42 and 47-58; McWilliams, depo. pg. 78; Frazier, Defendants' Exhibit J, ¶ C(1)(c); Sullivan, Defendants' Exhibit K, ¶ C(1)(a) and (b) and depo. pg. 109-111; Thigpen, Defendants' Exhibit L, ¶ C(1)]. Indeed, this finding is supported and illustrated by the myriad of causal questions raised by the defendants with respect to Myers' claims, given his complex pre-existing medical history.

The Fifth Circuit's result in *Exxon Mobil* is consistent with the Supreme Court's decision in *Amchem Products Inc. v. Windsor*. In *Amchem*, the plaintiffs sought damages for present and future potential adverse effects from exposure to the defendants' asbestos products. The district court conditionally certified the class for settlement purposes, based on the commonality that all class members had been exposed to asbestos products supplied by the defendants. *Id*. at 623-624. The Third Circuit reversed, finding the predominance requirement had not been satisfied. The court said:

> Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma . . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.

> The [exposure-only] plaintiffs especially share little in common, either with each other or with the presently injured class members. It is unclear whether they will contract asbestos-related disease and, if so, what disease each will suffer. They will also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories.

*Id*. at 625.

The Supreme Court agreed with the Third Circuit, finding that these uncommon questions predominated over "any overarching dispute about the health consequences of asbestos exposure." *Id*. at 624. Thus, given the greater number of questions peculiar to the class members in each category (and to individuals within each category) and the significance of those uncommon questions, the predominance standard had not been met. *Id*. This was so despite the shared experience of asbestos exposure among the plaintiffs in the proposed class. In sum, the Court found that while the shared exposure may satisfy Rule 23(a)'s commonality requirement, more was required to satisfy the predominance requirement of Rule 23(b)(3).

The same is true in the present case. The predominance requirement is not satisfied in this case based on the proposed class members' shared common experience of radiation exposure. To the contrary, the myriad of uncommon disparate questions regarding causation in this case preclude such a finding.

Plaintiff attempts to satisfy the predominance requirement by arguing that there is a common liability issue, that is, the fault of the defendants. Plaintiff argues that the defendants' alleged negligence in failing to test for, or monitor, radiation levels at the worksite, and failing to warn or protect the workers from exposure to allegedly high levels of radiation predominate throughout the proposed class.

However, the Fifth Circuit refused to accept substantially the same argument in the *Exxon Mobil* case. The Fifth Circuit rejected that argument because it "does no more than prove that some common issues exist across the class." Thus, in noting that, "[t]he

predominance inquiry . . . is more rigorous than the commonality requirement", the Fifth

Circuit found that because the cause of the fire and related liability issues were relatively

straightforward, compared to the vastly more complex individual issues of medical

causation and damages, it was not an abuse of discretion for the district court to conclude

that the plaintiffs failed to demonstrate that the class issue of negligence predominated.

*Exxon Mobil*, 461 F.3d at 603. That is the case here.[4]

Although the plaintiff claims that the defendants' liability is based on an event

restricted to a particular limited time frame, that is, exposure to radiation during the period

of approximately March 1, 2007 through April 30, 2007, the causal mechanism for each of

the class member plaintiff's injuries, alleged exposure to radiation, is not straightforward.

While it is true that the cause of the exposure itself is an issue common to the class, each

individual plaintiff must meet the burden of medical causation, which, in turn, will depend

on any number of factors enumerated by the experts who would testify at trial, including the

---

[4]The undersigned has considered *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) which has been cited by Myers in support of his position. *Mullen* involved claims of alleged seamen for respiratory illness (asthma and bronchitis), which, according to the plaintiff's expert, were caused by the floating Casino's defective or improperly maintained air conditioning and ventilation system, which allowed extremely smokey conditions to exist in the Casino. In *Mullen*, the class was certified under a specialized plan whereby the liability issues (seaman status, status of the Casino as a "vessel" within the meaning of the Jones Act, unseaworthiness and negligence) would be tried in an initial class trial, and then, only if the class prevailed on these issues, would the court permit a "second phase" of mini-trials in waves of five class members at a time to consider each plaintiff's individual issues of causation, damages and comparative negligence. *Id.* at 623. The court found no abuse of discretion with the court's plan as the liability issues were "not only significant, but also pivotal" because if the Casino prevailed, they would also prevail in the case. On the other hand, given that the plaintiff's expert had already attributed the plaintiffs' maladies to the smokey conditions existing in the Casino, the issues of causation and damages paled in comparison. *Id.* at 626. The opposite case is presented herein. The evidence regarding negligence and unseaworthiness will be minimal in comparison to those issues regarding each plaintiff's medical causation and damages as those issues will be hotly contested at trial and will require individualized expert testimony as to each individual class member.

15

level of each plaintiff's individual exposure (which will, in turn, depend on the length of time each spent at the job site and the location of each plaintiff on the site relative to the NORM impacted material) each plaintiff's pre-existing medical history, susceptibility to illness, type of symptom or illness each plaintiff may experience (if any), and type of medical treatment rendered, or which may be rendered, in the future.

In response, Myers argues that each class member plaintiff's damages may be calculated pursuant to a formula. That argument is contrary to the expert evidence submitted. Moreover, a substantially similar argument was rejected by the *Exxon Mobil* court. There the court found that the members' damage claims would not be subject to any sort of formalaic calculation because "each individual plaintiff suffered different alleged periods and magnitudes of exposure, and suffered different alleged symptoms, as a result." *Id.* at 602. Moreover, the court found that the very nature of claims for compensation "for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances", which cannot be calculated by objective standards and is not therefore susceptible to a class wide remedy. *Id.*

Plaintiff argues that the Supreme Court's decision in *Story Parchment Co. v. Paterson Parchment Paper Company*, 282 U.S. 555, 51 S.Ct. 248 (1931) requires a different result. However, plaintiff's reliance on *Story Parchment* is misplaced. *Story Parchment* was a Sherman Anti-Trust Act claim asserted by a sole plaintiff, not a class action. The plaintiff in that case presented sufficient evidence to prove that the actions of the defendants

caused him economic damage (lost profits and dimunition of business value); however, he was unable to prove the precise amount of his economic damages with exactness or precision. The case presented no question of the *causation* of plaintiff's claimed damage. The case stands for the general rule that "damages resulting necessarily and immediately and directly from the breach are recoverable", even if the amount of damages cannot be determined with certainty, whereas damages which have not been shown to be "the ceratin result of the breach" may not. *Id.* at 562.

The difficult questions of causation which are presented in this case preclude a class wide finding that any particular class member's claimed damage resulted "necessarily and immediately and directly from the [defendants' alleged] breach." This is simply not a case where liability for each plaintiff's claimed damages is certain to result from the exposure claimed. Therefore, the *Story Parchment* rationale is inapplicable.

During oral argument, with respect to the common fault issue, plaintiff's counsel briefly suggested taking advantage of Rule 23(c)(4), which allows class certification of some issues with individual treatment of others. This suggestion was never fully briefed to this court, and, accordingly, it does not appear that this suggestion was intended to present a viable option for this court. Nevertheless, it will be addressed briefly.

Judge Berrigan of the Eastern District refused to accept a similar argument in *Kemp v. Metabolife International, Inc*., 2002 WL 113894, *4 (E.D. La. 2002) (Berrigan, Chief J.) reasoning that "the Fifth Circuit explains that, first, 'the cause of action, as a whole, must

satisfy Rule 23(b)(3)'s predominance requirement . . . .  Once that requirement is met, Rule 23(c)(4) is available to sever the common issues for a class trial.'" *Id. citing Smith v. Texaco, Inc.*, 263 F.3d 394, 409 (5th Cir. 2001), *opinion withdrawn and dismissed due to settlement*, 281 F.3d 477 (5th Cir. 2002); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir. 1996).  "The predominance requirement cannot be satisfied by seeking to repeatedly split the claims pursuant to Rule 23(c)(4)." *Id.*  "To read the rule . . . as allowing a court to pare issues repeatedly until predominance is achieved, would obliterate Rule 23(b)(3)'s predominance requirement, resulting in automatic certification in every case in which any common issue exists, a result the drafters of the rule could not have intended." *Id.*

The undersigned agrees with Judge Berrigan's reasoning.  The common fault issue identified by plaintiff notwithstanding, and for the reasons set forth more fully above, liability as to each proposed plaintiff is, overall, a highly individual issue, as are questions of damages and causation. *Id., citing  Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 96 (W.D. Mo. 1997).[5]  Thus, the undersigned cannot accept the plaintiff's suggestion; individual issues predominate over those common to the proposed class.

By Reply, Myers argues that each proposed class member has a "legitimate fear and increased risk of contracting cancer as a direct result of the alleged exposure to radiation",

---

[5]Finding that whether cigarettes cause disease or are addicting in general did little to advance the litigation in that case, the *Smith* court held, "Liability will not turn on whether cigarettes are generally capable of causing disease: liability will depend upon whether cigarettes caused a particular plaintiff's disease. The latter inquiry will turn in [*sic*] numerous individual factors, rendering the causation factor inappropriate for common disposition." *Id.*

entitling each to damages for "fear and fright" and medical monitoring. This argument, however, merely begs the question. Any purported class member's increased risk of contracting cancer can only be assessed following analysis of the various individual causitive factors set forth above. Moreover, each plaintiff's fear can only be determined legitimate as a result of their knowledge of the facts and appraisal of what occurred, and further depends upon each individual's feelings and response, a highly subjective and individualized inquiry. *See Hagerty v. L&L Marine Services, Inc.*, 788 F.2d 315, 317 (5th Cir. 1986)[6].

Moreover, as pointed out by the defendants in their pending Motion for Partial Summary Judgement, without deciding the issue, it appears that medical monitoring damages are not available under Louisiana law absent manifest physical or mental injury or illness; to the extent that plaintiffs without symptoms or disease seek a lump sum damage award for medical monitoring, such damages are not recoverable under FELA and by extension, under the Jones Act. *See* Louisiana Acts 1999, No. 989, § 2; *Bonnette v. Conoco*, 837 So.2d 1219, 1230 fn. 6 (La. 2003); *Metro-North Commuter Railroad Company v. Buckley*, 521 U.S. 424, 427 and 438-439, 117 S.Ct. 2113 (1997); *Green v. McAllister Brothers Towing, Inc.*, 2005 WL 742624, *22-23 (S.D.N.Y. 2005).

Thus, to the extent that the proposed class contains both asymptomatic members and

---

[6]The undersigned notes that it appears that the analysis of "cancerphobia" in *Haggerty* with respect to Jones Act seamen who are disease and symptom free was rejected by the United States Supreme Court in *Metro-North Commuter Railroad Company v. Buckley*, 521 U.S. 424, 427 and 438-439, 117 S.Ct. 2113 (1997).

members like Myers who have exhibited symptoms, medical monitoring damages would not

be a class wide common issue. Finally, even if medical monitoring damages were

recoverable class wide, the greater number and significance of uncommon and diverse

issues surrounding specific and medical causation discussed above preclude a finding of

predominance.[7]

_____

[7]Although the undersigned has determined that class certification should be denied based on Myers' failure to satisfy his burden of establishing predominance, without deciding the issue, it appears that class certification is also inappropriate based on Myers' failure to satisfy the typicality, adequacy of representation and numerosity requirements of Rule 23(a), as well as the superiority requirement of Rule 23(b)(3).

The same factors which preclude a finding of predominance likewise appear to preclude a finding of typicality. Rule 23(a)(3) requires that the claims of the class representatives be typical of the claims of the class. *In re Vioxx Products Liability Litigation*, 239 F.R.D. 450, 460 (E.D.La. 2006). Typicality does not require that these claims be identical, but rather that they share the same essential characteristics. *Id.* Given Myers' extensive, unique and complex medical and employment history, it does not appear that Myers' claim would share the same essential characteristics of the absent class members claims. To the contrary, in attempting to prove his claim, it does not appear that Myers would necessarily prove the claims of any, let alone all, of the absent class members.

Moreover, it does not appear that Myers is an adequate class representative. A class representative must "possess the same interest and suffer the same injury as the [other] class members." *Amchem,* 521 U.S. at 625-626. The proposed class in this case does not distinguish between those members who, like Myers, have experienced symptoms and those who have not. However, as recognized in United States Supreme Court in *Amchem*, the interests of these subclasses (those members, like Myers, currently exhibiting poor health, and exposure only-members) are not aligned. *Id.* at 626. For those experiencing symptoms, like Myers, the critical goal appears to be in obtaining a large present recovery, while the interest of the exposure-only members appears to be in ensuring an ample fund for medical monitoring and payment of future expenses in the event of potential illness. *See Id.*

Additionally, plaintiff has presented no competent summary judgment evidence demonstrating that the number of potential claimants is so numerous that joinder is impracticable. To satisfy the numerosity prong, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. Louisiana State University,* 213 F.3d 858, 868 (5th Cir. 2000) *quoting Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981). "The mere allegation that the class is too numerous to make joinder practicable, by itself, is not sufficient to meet this prerequisite." *Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 833 (5th Cir.1983). While plaintiff has alleged numerosity in his pleadings, has testified as to the dust and smoke producing decommissioning operations and has supplied the court with a list of the citizenship of the POBS and their "first date" on the job site, he has produced no proof of claims forms for any other potential claimant, nor has he supplied information as to alleged length, duration or concentration of any alleged exposure of any worker or any information regarding adverse health consequences of any of these workers. Thus, it does not appear that the evidence presented brings Myers' assertions of numerosity beyond the "mere allegation" level. To the contrary, with the exception of the separate lawsuit filed by Mr. DeHart, this court may well be faced with a class of one.

Finally, the predominance of individual issues relating to causation and damages, detracts from the superiority of the class action device in resolving this litigation. *See Exxon Mobile*, 461 F.3d at 604-605. As noted by Judge Fallon with respect to a proposed product liability class action lawsuit, any efficiencies that could be secured through class wide adjudication are outweighed by the difficulties associated with class management, given the predominance of individual issues. *In re Vioxx*, 239 F.R.D. at 463. Likewise, in this case, it appears that the predominance of individual issues renders adjudication on a class wide basis inferior to separate adjudication of any

## CONCLUSION

For the above reasons, **IT IS RECOMMENDED** that the defendants' Motion for Partial Summary Judgement [rec. doc. 167] be **granted**, and accordingly, that the **plaintiff's request to certify** this matter as a **class action** be **denied**.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. Douglass v. United Services Automobile Association, 79 F.3d. 1415 (5th Cir. 1996).**

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Signed this 9th day of July, 2009, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

future claims.