# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

GEORGE LARRY MYERS                    \*CIVIL ACTION NO. 6:08-0168

VS.                                                     \* MAGISTRATE JUDGE HILL

BP AMERICA, INC., ET AL.                  \*BY CONSENT OF THE PARTIES

### REASONS FOR RULING

Pending before the Court are the Motions for Partial Summary Judgment filed by BP America Production, Inc.  ("BP") and  Cenergy Corporation ("Cenergy"). [rec. docs. 244 and 241].  By these Motions, BP and Cenergy seek summary judgment on the plaintiff's wrongful termination and whistleblower claims, asserted as Counts Four and Five in plaintiff's Fourth Amended Seaman's Complaint.  Both defendants additionally request that they be awarded attorneys' fees and costs pursuant to La.R.S. 23:967(D).  The plaintiff, George Larry Myers ("Myers"), has filed opposition [rec. doc. 258], to which BP and Cenergy filed Replies [rec. docs. 268 and 266].  Oral argument on the Motions was held on August 10, 2010, and the Motions were taken under advisement.

In response to concerns raised by the undersigned during oral argument as to whether this Court may consider Myers' unsworn declaration under penalty of perjury in light of his prior deposition testimony, the parties have filed authorities in support of, and in opposition to, this court's consideration of the declaration.  [rec. docs. 277 and 278].  BP has additionally filed a memorandum as to whether Title 46 U.S.C. § 2114, mentioned by counsel for the plaintiff during oral argument, is relevant to the issues pending before the Court. [rec. doc. 275].

For the reasons which follow, Cenergy's Motion for Partial Summary Judgment [rec. doc. 241] is **granted**, and, accordingly, Myers' wrongful termination and whistleblower claims under La. R.S. 23:967 and La. R.S. 30:2027 are **dismissed with prejudice**.  BP's Motion for Partial Summary Judgment [rec. doc. 244] is **granted in part** and **denied in part**, and accordingly, Myers' wrongful termination and Louisiana Whistleblower claim under La. R.S. 23:967 are **dismissed with prejudice,** and Myers' wrongful termination[1] and Environmental Whistleblower claim under La. R.S. 30:2027 remain pending. The defendants' requests for attorneys' fees and costs are **denied.**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, George Larry Myers, filed this suit in state court[2] on behalf of himself and allegedly similarly situated people claiming personal injury as a result of exposure to airborne radiation dust/t-norms, between March 1, 2007 and April 30, 2007, while engaged in a platform decommissioning project.  On February 4, 2008, the defendants removed the case to this court.

The platform which was being decommissioned was owned by BP.  A time-chartered liftboat, L/B DIXIE PATRIOT, which was supporting the platform decommissioning, was jacked-up adjacent to the platform. Myers and other workers engaged in the

---

[1]It is unclear to the Court how Myers can maintain a wrongful termination claim against BP when BP was not Myers' employer.  However, that issue was not raised by BP, was not briefed, and, presumably, remains for another day.

[2]The 16th Judicial District Court.

decommissioning lived aboard L/B DIXIE PATRIOT while the work was being performed to the platform to take it out of service.

On July 29, 2009, this court denied plaintiff's request to certify this case as a class action. [rec. doc. 203].  Thereafter, Myers filed a Fourth Amended Complaint. This Amending Complaint is intended to substitute for, and replace, the allegations set forth in his three prior Complaints. [rec. doc. 206].  In his Fourth Amended Complaint, as was the case with respect to his first three Complaints, Myers asserts causes of action for: (1) negligence under the Jones Act, general maritime law, and the applicable Louisiana law, and, alternatively, a claim for negligence under 33 U.S.C. § 905(b); (2) the unseaworthiness of L/B DIXIE/PATRIOT; and (3) maintenance and cure.  He additionally asserts as Counts Four and Five, respectively, claims against BP and Cenergy under the Louisiana Whistleblower statute (La. R.S. 23:967) and the Louisiana Environmental Whistleblower statute (La. R.S. 30:2027[3]), and claims for wrongful termination of his employment in violation of Louisiana state law (La. Civ. Code article 2315 and 2316) as a result of the violation of statutory duties owed to plaintiff, that is, those duties found in La. R.S. 23:967 and 30:2027.  [rec. doc. 206, ¶ ¶ 14-18].

---

[3]Myers incorrectly cited the statute in his Fourth Amended Complaint alleging the violation of a non-existent statute La. R.S. 30:227. This mis-citation is discussed below.

## LAW AND ANALYSIS

**Standard on Motion for Summary Judgment**

Fed.R.Civ.Proc. Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

The defendants' Motions for Summary Judgment are properly made and supported. Thus, Myers may not rest upon the allegations in his pleadings, but, rather, must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).  Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial.  *Celotex*, 106 S.Ct. at 2552.

4

Myers has submitted evidence in opposition to the instant Motion.  However, Myers'

evidence fails to demonstrate that there is a genuine issue of material fact necessitating a

trial on his wrongful termination and whistleblower claims against Cenergy, and his

wrongful termination and  Louisiana Whistleblower claim against BP.  Accordingly,

summary judgment with respect to these claims is appropriate in this case, and will be

granted.

## I.  Claims under La. R.S. 23:967

### A.  BP

It is undisputed that Myers was not the "payroll employee" of BP.  Myers received

his paycheck from Cenergy, received an IRS form 1099 from Cenergy and listed Cenergy as

his employer on his income tax returns; Myers received no compensation directly from BP,

and BP did not withhold taxes or issue him a 1099.  Thus, Myers admits that Cenergy was

his "paycheck" and "general employer." [Statement of Uncontested Material Facts numbers

8, 9 and 10, rec. doc. 244-2;  Responses to numbers 8, 9 and 10 and Counter-Statement of

Material Facts number 21, rec. doc. 258-2].  Myers asserts, however, that he was the

"special employee" of BP, and, thus, he argues that BP may be liable under the Louisiana

Whistleblower statute as Myers' "special employer".

Under the Louisiana Whistleblower Statute, an employer may not take reprisal

against its employee who directs attention to the employer's violations of law. La. R.S.

23:967.[4]

The Statute does not define "employer."  However, courts have consistently held that

the definition of "employer" for purposes of the Louisiana Employment Discrimination Law

_____

[4]La. R.S. 23:967 provides as follows:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.
(2) "Damages" include compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.

D. If suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employee.

contained in  La. R.S. 23:302(2)[5] is applicable to Whistleblower claims under La. R.S. 23:967.  *Langley v. Pinkerton's, Inc.*, 220 F.Supp.2d 575, 580 (M.D. La. 2002) *citing Jackson v. Xavier Univ. of Louisiana*, 2002 WL 1482756 (E.D. La. 2002) and *Jones v. JCC Holding Co.*, 2001 WL 537001 (E.D. La. 2001).

Myers argues that BP is liable under the statute because BP was his "special employer", as he reported to the BP person in charge and other BP personnel and followed the orders of BP personnel.  That argument, however, does not make BP the "employer" of Myers.  As noted by Judge Parker in *Langley*, "[t]hough Louisiana's test for determining the existence of an employer-employee relationship relates to 'right of control,' the [Louisiana] legislature has given 'employer' a specific definition . . . [which] controls." *Langley*, 220 F.Supp.2d at 580 *citing Duplessis v. Warren Petroleum, Inc.,* 672 So.2d 1019, 1023 (La. App. 4th Cir. 1996)[6]. Thus, "[b]ecause the term 'employer' is precisely defined by the Louisiana Employment Discrimination law to require receipt of services by the employee in exchange for compensation to him", Judge Parker found no legal basis under Louisiana law

---

[5]Under La. R.S. 23:302(2), "employer" is defined as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee."

[6]*Duplessis* interprets La.R.S. 23:1006A(1), the predecessor to La.R.S.23:302(2).  Both require that the"employer" give compensation to the employee. However, § 1006A(1) limited the statute's applicability to an employer who employs more than fifteen employees, while § 302(2) limits applicability of the law to employers who employ twenty or more employees within the state.

for permitting recovery on the basis of an alleged joint or co-employer status.  Rather, where the defendant provided neither compensation nor benefits to the plaintiff, and did not withhold federal, state, unemployment or social security taxes for the plaintiff, that defendant could not be held liable under the Louisiana Whistleblower statute.  *Id. citing Onyeanusi v. Times-Picayune Publ'g. Corp.*, 485 So.2d 622 (La. App. 4th Cir. 1986)[7].

Indeed, Louisiana courts have consistently defined the "employer" who may be liable under the Louisiana Whistleblower statute as the one who gives compensation to an employee, not the one who has the right to control the employee.  *See Seal v. Gateway Companies, Inc*., 2002 WL 10456, *5 (E.D. La. 2002) (and cases cited therein) (finding that "Louisiana jurisprudence is precisely to the effect that the 'right to control' analysis is not applicable, since the term 'employer' is precisely defined by the Louisiana's employment discrimination statute [and that] if compensation of some kind was not paid by that particular commercial or legal entity directly to the employee, under Louisiana employment discrimination law, such a commercial or legal entity is not an 'employer.'").

Because there is no genuine issue of material fact demonstrating that BP compensated Myers, withheld any taxes for him or issued him any 1099 forms, BP is not an "employer" within the meaning of La. R.S. 23:302(2).  Summary judgment is therefore proper in favor of BP with respect to Myers' claim asserted in Count Four under the

---

[7] *Onyeanusi* interprets La.R.S. 23:1006A(1), the predecessor to La.R.S.23:302(2).  *See* fn. 6, *supra.*

8

Louisiana Whistleblower statute, La. R.S. 23:967.[8]  Moreover, because Myers' wrongful termination claim asserted in Count Five is, in part, purportedly based on those duties encompassed by La. R.S. 23:967, summary judgment is properly granted with respect to that claim as well.

### B. Cenergy

Unlike BP, Cenergy, for purposes of the instant Motion, does not contest that Myers was its employee as that term is defined under La. R.S. 23:302(2), applicable to Whistleblower claims under La. R.S. 23:967.[9]  Cenergy contends, however, that Summary Judgment is appropriate because Myers did not complain to any Cenergy employee about any actual violations of state law by Cenergy regarding his alleged NORM radiation exposure prior to his alleged termination.  In short, Cenergy asserts that Myers has no claim under the Louisiana Whistleblower statute because he could not have been terminated in retaliation for complaints that where not made to Cynergy until after his alleged termination. The undersigned agrees.

---

[8]The undersigned finds that the case cited by plaintiff in his opposition memorandum interpreting Illinois law, *Hester v. Glister-Mary Lee Corp.*, 386 Ill. App. 3d 1107, 899 N.E.2d 589 (Ill. App. 5th Dist. 2008), as well as the federal statute mentioned during oral argument, 46 U.S.C. § 2114, are not relevant to this court's determination of this Louisiana state law claim.

[9]During oral argument, counsel for Cenergy asserted that Myers was an independent contractor; he presumably had a contract with Cenergy and received a 1099 as opposed to a W-2 from Cenergy.  However, because the issue of whether Myers was an employee or an independent contractor cannot usually  be decided on a Motion for Summary Judgment, Cenergy was not asserting Myers' status as a ground in support of Summary Judgment.

In order to prevail on a claim under the Louisiana Whistleblower statute, the plaintiff must establish that: "(1) [her employer] violated the law through a prohibited workplace act or practice; (2) she advised [her employer] of the violation; (3) she then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) she was fired as a result of her refusal to participate in the unlawful practice or threat to disclose the practice." *Hale v. Touro Infirmary*, 886 So.2d 1210, 1216 (La. App. 4th Cir. 2004).  Failure of the plaintiff to provide evidence to satisfy any of these elements must result in summary judgment in favor of the employer.  *Id.*

Louisiana R.S. 23:967 clearly provides that, in order to assert a claim under the Louisiana Whistleblower statute, the employee must have advised his employer of a violation of state law, prior to his termination.  La. R.S. 23:967(A)(1) ("An employer shall not take reprisal against an employee who . . . *after advising the employer of the violation of law* . . . threatens to disclose a workplace act or practice that is in violation of state law." (emphasis added)); *Hale*, 886 So.2d at 1216 (noting that the plaintiff must establish that she advised her employer of the alleged violation of law and then threatened to disclose the violation, and, as a result of her threat, was fired).

The evidence before this court establishes that plaintiff did not advise anyone at Cenergy that there had been a violation of any state law, much less a violation of state law by Cenergy, prior to his alleged termination.  To the contrary, the record establishes that

Myers was the sole Cenergy employee on the platform[10]; there was simply no Cynergy employee on the platform to whom he could report a violation.  [Myers Deposition, pg. 504].

Further, there is no evidence to suggest that Myers contacted anyone from Cenergy on shore while he was on the platform to complain about unsafe levels of radiation.  To the contrary, while Myers allegedly made a statement to Fred Cart, an El Mar employee who was the BP person-in-charge on the platform, to the effect that workers should be "suited up" when working in an area emitting over 50 rads of radiation, Myers testified that he did not contact anyone else to let them know of his concerns. [Myers Deposition, pg. 40-41].

Moreover, Kirk Foster, the HSSE manager for Cenergy, testified that he had no communication with Myers while he, Myers, was out on the job; Myers testified that he did not report safety issues on the platform to Cenergy on shore. [Foster Deposition, pg. 76; Myers Deposition, pg. 532].  To the contrary, Myers testified that he would report safety issues to the person in charge (PIC), El Mar employee Fred Cart, and the QP, BP employee Barry Roland, not Cenergy. [Myers Deposition, pg. 531-532].

The evidence establishes that plaintiff did not even suggest to Foster that he, Myers, had been exposed to NORM radiation until after he, Myers, had been told by Denise Kozar, a Cenergy account manager, on April 20, 2007, that BP did not want Myers to return to the platform.

---

[10]Myers' relief would arrive on the platform when Myers was leaving to go ashore. [Myers Deposition, pg. 535].

In his deposition, plaintiff states that he first contacted Chris Jones, a BP HSSE employee in Houston, to notify Jones that he was sick and needed to be transported off of the platform.  [Myers Deposition, pgs. 305-306, 310].  This is consistent with the April 19, 2007 Incident Report, which designates Cart as the person Myers reported to, and Christopher D. Jones as the "Originator" of the report.  The report notes that Myers was complaining "of general aches and pains for the last three days" and "requested to see personal physician".  [rec. doc. 256-9, pg. 42].  There is no evidence that, at that time, Myers told anyone at Cenergy that he was sick as a result of radiation, or that he had requested to be taken off the platform.

After Myers was onshore and driving home on April 20, 2007, Myers testified that Chris Jones called him again.  It was during this conversation that Myers claims to have first advised Jones that he had been exposed to radiation. [Myers Deposition, pg. 315, 395-396; Myers Unsworn Declaration ¶ 5[11]].  While Myers initially testified that Kozar called him before Jones [Myers Deposition, pg. 309], later in his deposition, Myers testified that he didn't know for sure if he talked with Jones before or after talking with Kozar. [Myers

---

[11]The Court may consider this paragraph of Myers Unsworn Declaration as it does not directly contradict his prior deposition testimony. *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893-894 (5th Cir. 1980); *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988); *Dibidale of Louisiana, Inc. v. American Bank & Trust Company,* 916 F.2d 300, 307-308 (5th Cir. 1990); *EEOC v. SFAILA, LLC*, 666 F.Supp.2d 637, 645 (E.D. La. 2009).  In his deposition, Myers testified, as is stated in his Unsworn Declaration, that he had discussed his exposure to radiation with Chris Jones on April 20, 2007 on his way home from the platform.  *See* Myers Deposition, pgs. 306-309, 315, 395-396, 445-446].  Any alleged inconsistency goes to the weight of the evidence rather than its admissibility. *Id.*

12

Deposition, pg. 446].  With respect to Cenergy, the sequence of events is not relevant, as

there is no evidence that Myers ever told Kozar that he had been exposed to radiation prior

to her call to him, nor is there any competent evidence that Jones, or any other person, told

Kozar, prior to her call to Myers, that Myers was claiming that he had been exposed to

unsafe levels of radiation.

Moreover, there is no competent evidence that Myers expressed these concerns to

Foster prior to his alleged April 20, 2007 termination.  Initially Myers testified in his

deposition that he, Myers, had called Foster from his house. [Myers Deposition, pg. 39-40].

Myers later testified that he reported his alleged exposure to Foster on either April 20 or

April 21, 2007, but that he was not sure. [Myers Deposition, pg. 315].  Myers never claimed,

however, that he contacted Foster before he received Kozar's telephone call.

Foster testified that he was first advised by Myers of his alleged exposure to NORM

radiation after Myers returned to Ruston, when they were discussing referring Myers to a

facility for evaluation. [Foster Deposition, pg. 76].  Moreover, Foster testified that while he

would defer to Myers as to the date he, Myers, got the call from Kozar, Foster would have

been notified after that. [Foster Deposition, pg. 77].  Thus, Foster's testimony clearly

establishes that he, Foster, was not advised by Myers of any alleged exposure to unsafe

levels of radiation prior to Kozar's April 20, 2007 call in which Kozar told Myers that BP

did not want him to return to the platform.  Indeed, the April 24, 2007 emails between Kozar

and Foster, and Myers and Foster, support this finding.  It was not until April 24, 2007 that

Kozar emailed Foster about Myers' termination and Myers did not email Foster about his concerns until later that same day. [Foster Deposition, pg. 23-24; rec. doc. 256-9, pgs. 43 and 50].

This evidence is consistent with Myers' declaration.  Nowhere in his declaration does Myers claim that he told Foster, or anyone at Cenergy, about his alleged radiation exposure prior to his alleged April 20, 2007 termination.  The entire declaration is directed at Myers' allegations of contact with, and complaints to, BP personnel.  Indeed, during oral argument, when asked to respond to Cenergy's argument that there had been no prior complaint to any Cenergy employee, plaintiff's counsel candidly admitted that while Foster was concerned about Myers "being railroaded out because he was sick and made a complaint", those events occurred after Myers had been terminated.

For these reasons, Summary Judgment is properly granted to Cenergy with respect to Myers' claim under the Louisiana Whistleblowers statute, La. R.S. 23:967, asserted in Count Four.[12]  Moreover, because Myers' wrongful termination claim asserted in Count Five is, in

---

[12]It appears that Summary Judgment is also proper as to Cenergy because Myers has not established that there was an actual violation of state law by Cenergy.  However, the Court need not reach this alternative ground.  It is undisputed that, other than Myers, Cenergy had no employees on the platform. [Myers Deposition, pg. 504, 535].  Thus, there is no evidence upon which the court could find that Cenergy committed an actual violation of any state law with respect to radiation exposure or protection therefrom. To the extent that Myers contends that the violation of state law was an alleged violation of the Environmental Whistleblower statute (La. R.S. 30:2027), that argument is circular.  In the absence of any supporting jurisprudence, which has not been brought to the attention of, nor discovered by, this Court, the Court cannot accept that the alleged violation of one whistleblower statute could serve as the basis for a claim under another whistleblower statute.

The Court also notes that the United States District Court for the Eastern District of

part, purportedly based on those duties encompassed by La. R.S. 23:967, summary judgment

is properly granted with respect to that claim as well.

## II.  Claims under La. R.S. 30:2027

### A. Cenergy

The same reasons which support summary judgment with respect to Myers' claim

under the Louisiana Whistleblower statute (La. R.S. 23:967) supports summary judgment

with respect to Myers' claim under the Environmental Whistleblower statute, La. R.S.

30:2027. [13]

To make a *prima facie* case under the Louisiana Environmental Whistleblower

statute, La. R.S. 30:2027, the plaintiff must prove: (1) that the employee engaged in a

protected activity; (2) that an adverse employment decision followed; and (3) that a causal

connection between the two existed.  *Gonzalez v. J.E. Merit Constructors, Inc*., 263 F.3d

---

Louisiana has held that a claim under the general Louisiana Whistleblower statute, La. R.S. 23:967, is superceded by a claim under the more specific Environmental Whistleblower statute, La. R.S. 30:2027.  *Barber v. Marine Drilling Management, Inc*., 2002 WL 237848, *10 (E.D. La. 2002).  The Court expresses no opinion on this holding under Louisiana law.

[13]La. R.S. 30:2027 provides in pertinent part as follows:

A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:

(1) Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.

162, 2001 WL 803545, *2 (5th Cir. 2001) (unpublished) *citing Powers v. Vista Chemical Company*, 109 F.3d 1089, 1095 (5th Cir. 1997).

The Court will assume, without deciding, that Myers has satisfied the first two prongs of the retaliation test, that is, that (1) Myers engaged in a protected activity in March 2007, when he questioned his immediate supervisor, PIC Fred Cart, regarding the lack of personal protection necessary for workers engaging in operations in an area allegedly emitting in excess of 50 rads, and/or on April 20, 2007, when Myers allegedly discussed his concerns with Chris Jones, and (2) that Myers was subsequently terminated from the BP decommissioning job on April 20, 2007.

The issue is whether Myers has presented sufficient evidence to survive summary judgment on the third element necessary to make his *prima facie* case, that is, the existence of any causal connection between his report of the hazard presented by the alleged unsafe levels of radiation and the lack of personal protective gear with his termination.

Under the Louisiana Environmental Whistleblower statute, an employee's failure to show that his protected actions motivated the employer's termination decision is fatal to his claim. *See Powers*, 109 F.3d at 1096. Obviously, an employer cannot retaliate against an employee for engaging in a protected activity that it did not know about at the time of the challenged action, here, Myers' termination in this case. *Gonzalez*, 263 F.3d 162, 2001 WL 803545 at *3  *citing Watts v. The Kroger Company*, 170 F.3d 505, 512 (5th Cir. 1999), *Robertson v. Bell Helicopter*, 32 F.3d 948, 952 (5th Cir. 1994) and *Grizzle v. Travelers*

16

*Health Networks, Inc.*, 14 F.3d 261, 267 (5th Cir.1994). The knowledge of the primary employment decision makers within the company is relevant for this analysis. *Id. citing Grizzle*, 14 F.3d at 267-68.

Myers has to provide evidence creating a genuine issue of material fact that Cenergy's employment decision makers for the BP decommissioning job were aware of Myer's report to Cart or Jones at the time that he was terminated on April 20, 2007.  As set forth above, there is no direct or circumstantial evidence to support such a finding.  Myers himself did not inform either Kozar or Foster of his concerns regarding unsafe levels of radiation or lack of protective gear, prior to the time that he was notified that BP did not want him to return to the platform.  The only employees that Myers may have informed about his concerns prior to his termination were Fred Cart and Chris Jones, neither of whom are Cenergy employees.  There is no competent evidence that either of these individuals talked with Kozar or Foster about the alleged unsafe levels of radiation or lack of protective gear prior to Myers' termination.

In sum, Myers has failed to produce any evidence, direct or circumstantial, which would allow a reasonable jury to infer that Cenergy's employment decision makers, Kozar or Foster, were aware of the alleged radiation hazard or lack of protective gear at the time of Myers' termination.  In the absence of any evidence of a causal connection between Myers' alleged report of the radiation hazard and lack of protective gear and his termination, Myers fails to make a *prima facia* case of retaliation under the Louisiana Environmental Whistleblower statute, La. R.S. 30:2027.

Summary Judgment in favor of Cenergy on this claim asserted in Count Four is therefore proper.  Moreover, because Myers' wrongful termination claim asserted in Count Five is, in part, purportedly based on those duties encompassed by La. R.S. 30:2027, summary judgment is properly granted with respect to that claim as well.

**B.  BP**

This is not the case with respect to plaintiff's claim under the Environmental Whistleblower statute against BP.  For the reasons which follow, on the record before this Court, summary judgment with respect to this claim against BP is not warranted.

Initially, the Court notes that BP complains that plaintiff has not properly pled any claim asserted under the Louisiana Environmental statute, La. R.S. 30:2027, as he has mis-cited the statute as La. R.S. 30:227 (a non-existent statute) in his Fourth Amended Complaint. Thus, BP suggests that any purported claim under the mis-cited statute should be dismissed.  During oral argument counsel for BP agreed that, if requested, this court should permit the filing of an additional amending complaint to properly plead a cause of action under  La. R.S. 30:2027, and that a Motion directed to that claim would be filed, to which the plaintiff could respond.

The Court notes that while the plaintiff has mis-cited the intended statute, it is reasonably clear to the Court that plaintiff intended to cite La. R.S. 30:2027, but failed to do so as a result of a typographical error, instead citing La. R.S. 30:227, a non-existent statute. Indeed, counsel for Cenergy determined this to be the case and, accordingly, addressed the

intended statute in its Motion for Summary Judgment.  Nevertheless, if necessary, the Court will allow the plaintiff to file an amended complaint to correctly cite the intended statute.

In this Motion, BP summarily suggests, without any supporting argument or jurisprudence, that to the extent that this court permits the plaintiff to restate his claim under "some other whistleblower statute" for the reasons supporting summary judgment under the Louisiana Whistleblower statute (La. R.S. 23:967) and for the reasons set forth in Cenergy's Motion for Partial Summary Judgment, that claim should be dismissed as well.  The undersigned disagrees.

The law with respect to the Louisiana Whistleblower statute (La. R.S. 23:967) and the Louisiana Environmental Whistleblower statute (La. R.S. 30:2027) differs in several crucial respects.  The latter statute does not employ the statutory definition of "employer" set forth in the Louisiana Employment Discrimination law, La. R.S. 23:302(2).  Therefore, Louisiana's "right of control" test for determining the existence of an employer-employee relationship, rather than the statutory "paycheck employer" test, presumably applies.  *See Langley*, 220 F.Supp.2d at 580 *citing Duplessis*, 672 So.2d at 1023; *Seal, supra.*  Myers has presented evidence that BP may be liable under the statute because he reported to the BP person in charge, and other BP personnel, and followed BP orders. [Myers Deposition, pgs. 23-24, 530-532, 534, 537-538; Myers Unsworn Declaration ¶ 10[14]].

---

[14]The Court may consider this paragraph of Myers Unsworn Declaration as it does not directly contradict his prior deposition testimony. *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893-894 (5th Cir. 1980); *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988); *Dibidale of Louisiana, Inc. v. American Bank & Trust Company*, 916 F.2d 300, 307-308 (5th Cir. 1990);

Moreover, the latter statute does not require that there be an actual violation of state law to be actionable.  To the contrary, the statute encompasses violations of federal, state and local laws, and  requires only that the employee reasonably believe that an activity or practice is in violation of such an environmental law, rule or regulation. *Cheramie v. J. Wayne Plaisance, Inc*., 595 So.2d 619, 624 (La. 1992); *Brown v. Catalyst Recovery of Louisiana, Inc*., 813 So.2d 1156, 1167 (La. App. 3rd Cir. 2002); *Chiro v. Harmony, Corporation*, 745 So.2d 1198, 1200 (La. App. 1st Cir. 1999) (noting that "[t]he purpose of the Louisiana Environmental Whistleblower Statute, LSA-R.S. 30:2027, is to protect employees from retaliatory action or other adverse employment action by employers for reporting *possible* environmental violations." (emphasis added)); *Stone v. Entergy Services, Inc*., 9 So.3d 193, (La. App. 4th Cir. 2009) (same); *Overton v. Shell Oil Co.*, 937 So.2d 404, 410 (La. App. 4th Cir. 2006) (same). Furthermore, there is at least one Louisiana case which supports a cause of action under the statute for merely complaining to one's supervisor.  *See Stehl v. Slam Resources, Inc.*, 1997 La. App. LEXIS 176, p. 8 (La. Ct. App. 1997) (concluding that "the legislature did not intend to preclude an action by an employee for retaliatory discharge when the employee reports or complains or otherwise 'discloses' the violation of an environmental law, rule or regulation to the person committing the act.").

---

*EEOC v. SFAILA, LLC*, 666 F.Supp.2d 637, 645 (E.D. La. 2009).   Myers' Unsworn Declaration is consistent with his deposition testimony regarding the chain of command and operating policies and procedures on the platform, [*See* Myers Deposition, pgs. 13-14, 22-24, 45-46, 529-532, 534, 537-538], and merely supplements that testimony with additional factual detail.  Any alleged inconsistency goes to the weight of the evidence rather than its admissibility.  *Id.*

Finally, Cenergy and BP are not similarly situated such that summary judgment may be properly granted to both based on the arguments set forth by Cenergy in its Motion.  It is undisputed that Cenergy's sole involvement in the BP decommissioning project was the participation of its employee, Myers.  However, it is clear from the record evidence that BP was extensively involved in virtually every aspect of the project, as evidenced by the fact that a conference call between personnel on the platform and BP personnel in Houston was held every morning.  [Myers Deposition, pgs. 45-48].

Thus, it is clear that knowledge possessed by BP is not necessarily limited to that possessed by Cenergy.  More specifically, while there is insufficient evidence to create a genuine issue of material fact as to the existence of any causal connection between Myers' report of the hazard presented by the alleged unsafe levels of radiation and lack of personal protective gear and his termination with respect to Cenergy, for the reasons which follow, there is sufficient evidence to create a genuine issue of material fact with respect to BP.

A claim under the Louisiana Environmental Whistleblower statute requires a plaintiff to prove, *inter alia*, that he suffered an adverse employment action that was specifically motivated by the employee's internal or external disclosure of an event reasonably believed to be a violation of environmental laws or regulations.  *Turner v. Cabot Corporation*, 1999 WL 804103, *2 (E.D. La. 1999) *citing* La. R. S. 30:2027 and *Powers*, 109 F.3d at 1094. "Plainly, for an employer to retaliate against an employee, the employer must be motivated (i.e., form a subjective intent) to take adverse employment action in return for the perceived

'wrongful' conduct of the employee." *Id. citing Powers,* 109 F.3d at 1094.

Since the motion pending before the Court is the defendant's Motion for Summary Judgment, the Court must consider the evidence in the light most favorable to the plaintiff. *Turner*, 1999 WL 804103 at *2 *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248 (1986) and *Aubrey v. School Bd. of Lafayette Parish*, 92 F.3d 316, 318 (5th Cir. 1996) ("draw[ing] all inferences most favorable to the party opposing the motion"). Moreover, the danger of granting summary judgment in a case where animus or intent is the central issue must also be borne in mind. *Id. citing International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). "When state of mind is an essential element of the nonmoving party's claim, it is less than fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility." *Id. quoting International Shortstop, Inc.*, 939 F.2d at 1265. Such determinations are, of course, within the province of the fact-finder.  *Id*.

In his opposition to BP's motion, Myers argues that various pieces of direct and circumstantial evidence, taken together, would permit a reasonable jury to draw the required connection between his termination on the BP decommissioning project and BP's decisionmaker's knowledge of his complaints regarding unsafe levels of radiation and the lack of personal protective gear provided to workers.  The undersigned agrees.

It is undisputed that BP knew that the decommissioning project involved work in areas where radiation was being emitted.  There was a radiation safety officer, Jerry Crowe,

22

on site who, according to Myers, had sent bulk samples of the paraffin in the pipes which were being cut for radiation evaluation.  According to Myers, he was present during a morning telephone conference call in March 2007, between Fred Cart, and BP personnel in Houston, Fred Durham, Jerry Foster and Tom Stroub, wherein reference to the radiation testing on the bulk samples was discussed.  During this conference, Myers testified that Stroub told Cart that he had seen the results on Durham's desk and that he was "not going to like" the results because they "were high, over 1000."  At that point, Cart picked up the phone and had a private conversation with Stroub.  [Myers Deposition, pgs. 45-57].

Myers also points to a conversation with Fred Cart, an El Mar employee who was the BP person-in-charge on the platform, and thus served as his immediate supervisor. During this conversation, Myers testified that Cart asked him to perform a Geiger counter test on a pipe which had been removed from the platform.  Myers claims to have gotten a reading of 150-200 rads on the Geiger counter.  He further testified that he told Cart that with levels over 50 rads, workers were supposed to "suit up" with protective gear.  Myers testified that he knew what a reading above 50 rads meant before this incident and then later learned that a respirator would not help in such a situation.  Cart then allegedly also performed a Geiger counter test and confirmed the reading was 150-200 rads. However, Myers asserts that the work was not stopped, and no personal protective equipment was provided to the workers. [Myers Deposition, pg. 25-33].  It is undisputed that this alleged conversation with Cart occurred prior to his April 20, 2007 termination.

23

The record also reveals an April 19, 2007 conversation between Myers and  Chris Jones, a BP employee, in which Myers told Jones that he was ill and requested to be transported off of the platform to see his physician; this conversation is memorialized by the Incident Report originated by Jones on April 20, 2007 and approved by Jerry Foster, of BP Houston. [Myers Deposition, pg. 305-306, 310; rec. doc. 256-9, pg. 42].  Myers also points to an April 20, 2007 conversation he allegedly had with Chris Jones, a BP employee, about the alleged unsafe levels of radiation on the platform, which he, Myers, believed had made him ill. [Myers Deposition, pg. 315, 395-396; Myers Unsworn Declaration ¶ 5[15]].

However, as noted above, it is less clear, whether the conversation with Jones occurred prior to, or after, Myers was contacted by Kozar and told not to return to the platform. [Myers Deposition, pg. 309, 446].

The above cited evidence, taken together, could give a reasonable fact-finder a sufficient  basis for concluding that BP was aware of the alleged unsafe levels of radiation present on the decommissioning project, that Myers' reported this environmental regulatory violation to his supervisor, Cart, and/or Chris Jones in Houston, that BP personnel in Houston were aware of these complaints, and that Myers' employment was terminated, at least in part, because of the complaints he made about the unsafe levels of radiation and the lack of personal protective gear.

In sum, taken in the light most favorable to Myers, the evidence cited by Myers creates a reasonable inference that BP acted in a retaliatory manner when it decided that

---

[15]*See* fn. 11, *supra.*

Myers should not return to the platform.  Accordingly, BP's Motion for Summary Judgment on Myers' Environmental Whistleblower claim against BP asserted in Count Four should be denied.  Moreover, because Myers' wrongful termination claim asserted in Count Five is, in part, purportedly based on those duties encompassed by La. R.S. 30:2027, summary judgment is denied with respect to that claim as well.

**Costs and Attorney's Fees**

Both Cenergy and BP request reasonable attorney's fees and costs pursuant to La. R.S. 23:967(D).  Under § 967(D), an employer may be entitled to attorneys' fees and costs if a suit is brought in bad faith or if the court determines the employer's act or practice was not in violation of state law.  *See Hale*, 886 So.2d at 1215 and fn. 8.  Louisiana appellate courts addressing the issue have found that these are independent bases for the award of fees. *Accardo v. La. Health Servs. & Indem. Co.*, 943 So.2d 381, 385-86 (La. App. 1st Cir. 2006) (discussing statutory history); *Hale*, 866 So.2d at 1215 and fn. 8.

Initially, this Court notes the discretionary nature of the statute, which states that an employer *may* be entitled to attorneys' fees and costs. La. R.S. 23:967(D).  The use of "may" rather than "shall" indicates a clear recognition by the legislature that attorney's fees and costs may not be appropriate in all cases which fail to meet the "unwieldy" burden of the Louisiana Whistleblower statute. *See Hale*, 886 So.2d at 1215.

Furthermore, the Court is not convinced that the first prong of § 967(D) is applicable because there are reasonable grounds to find that Myers brought these claims in good faith.

25

The second prong addresses instances in which the Court finds no violation of state law. However, in this matter, there has been no such finding as the Motions have been resolved on alternate bases.  Thus, because of the discretionary nature of § 23:967(D), along with the specific facts of this case as outlined above, the Court declines to award Cenergy and BP attorneys' fees and costs.

## CONCLUSION

For the above reasons, Cenergy's Motion for Partial Summary Judgment [rec. doc. 241] is **granted**, and accordingly, Myers' wrongful termination and whistleblower claims under La. R.S. 23:967 and La. R.S. 30:2027 are **dismissed with prejudice**.  BP's Motion for Partial Summary Judgment [rec. doc. 244] is **granted in part** and **denied in part**, and accordingly, Myers' wrongful termination and Louisiana Whistleblower claim under La. R.S. 23:967 are **dismissed with prejudice,** and Myers' wrongful termination and Environmental Whistleblower claim under La. R.S. 30:2027 remain pending.  The defendants' requests for attorneys' fees and costs are **denied.**

Signed this 28th day of September, 2010, at Lafayette, Louisiana.


_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE